FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2021 DEC 13  AM 11: 23

~~~~~ COURT
~~~~~ISTRICT OF FLORIDA
~~~~~, FLORIDA

**BRADLEY J. ORNS**

    Plaintiff,

v.                                         Case No. _____

**THE MIDDLESEX CORPORATION**

    Defendant.

_____

## VERIFIED COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND DEMAND FOR A JURY TRIAL

Your Plaintiff, BRADLEY J. ORNS ("Plaintiff" or "Orns"), appearing *pro se*,[1] sues Defendant, The Middlesex Corporation ("Defendant" or "TMC"), for employment discrimination and states the following to wit:

## JURISDICTION AND VENUE

1.    Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2.    This court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives federal courts "original jurisdiction of all civil actions arising under the

---

[1] "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

Constitution, laws, or treaties of the United States."

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), 42 U.S.C. § 2000e-5(f)(3), and Middle District of Florida Local Rule 1.04, because the employment practices alleged to be unlawful were committed within the Middle District of Florida and the Orlando Division is most directly connected with and in which the action is most conveniently advanced.

## PARTIES

5.     Plaintiff is a natural-born citizen of the United States of America and a resident of Lake County, Florida.

6.     At all material times giving rise to the claims herein, Orns was employed by TMC and worked within the Middle District of Florida.

7.     TMC is a multistate construction company incorporated in Massachusetts with over 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, and over 15 employees within the Middle District of Florida, thus it is a "covered entity" under 42 U.S.C. § 12111.

8.     TMC maintains its Southeast Region headquarters in Orange County, Florida at 10801 Cosmonaut Boulevard, Orlando, FL 32824.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDY

9.     On or about April 16, 2021, Orns dual filed a Charge of Discrimination

("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Rights ("FCHR"), alleging discrimination based upon Orns' mental disability. A copy of the Charge is attached hereto as **EXHIBIT "A"**.

10.   On October 6, 2021, Orns' attorney sent a letter to the EEOC seeking to amend the Charge.

11.   On October 7, 2021, Orns sent a letter to the EEOC notifying them that he had fired his attorney, and wished to strike the attorney's amendment and substitute it with his own. See **EXHIBIT "A"**.

12.   The EEOC failed to reach a determination as to the merits of Orns' Charge within 180 days as required by the ADA.

13.   Orns requested and the EEOC issued a Notice of Right to Sue letter on November 22, 2021, which is attached hereto as **EXHIBIT "B"**.

## FACTUAL ALLEGATIONS

14.   On December 1, 2014, Orns was hired as a "Field Office Administrator" by TMC.

15.   On or about May 1, 2016, Orns was promoted to "Office Engineer."

16.   The typical work day for TMC Engineers is 7:00 a.m.–5:00 p.m. Mon.–Fri., with an earlier start on days with Safety Meetings (which are held, at least, once a week), and a later finish on days with Weekly Project Meetings.

17.  On Monday, October 28, 2018, Orns suffered a major stroke, which caused permanent brain damage, cognitive impairment, and Generalized Anxiety Disorder—resulting in substantial limitations in the major life activities of sleeping, thinking, concentrating, and working, thus Orns is considered mentally disabled pursuant to 42 U.S.C. § 12102.

18.  TMC knew of Orns' stroke and subsequent disability, and admits that Orns is disabled in its verified Position Statement to the EEOC.

19.  On or about Monday, November 11, 2018, Orns returned to work as an Office Engineer with TMC.

20.  In the first quarter of 2019, Orns worked temporarily as an "Estimator" in TMC's Orlando office, because the Estimating Dept. was shorthanded.

21.  On or about May 1, 2019, Orns was promoted to "Field Engineer."

22.  Due to post-stroke effects, and upon the advice of his neurologist, Dr. Teddy Youn, Orns took medical leave on May 6, 2019, and thereafter applied for disability through Middlesex's disability insurance carrier.

23.  Before his employment with TMC, Orns was a "Combat Engineer" in the U.S. Army. Part of Orns' training and experience included building and demolishing bridges.

24.  Before his employment with TMC, Orns was awarded a bachelor of science degree in Materials Science and Engineering by the University of Florida.

As part of Orns' course work, he was required to design and estimate all costs for a steel, pedestrian bridge to be constructed on the University of Florida's campus.

25. With accommodation, Orns can perform the essential functions of a TMC Office or Field Engineer.

26. During his employment with TMC, Orns proved that he was a "qualified individual" before and after his stroke by, among other things, the facts that

(a) Orns met or exceeded expectations in all but one category of one of his six annual performance reviews;

(b) Orns won numerous "Core Value Awards" (given for safety, quality, professionalism, strong work ethic, and commitment);

(c) Orns never had any disciplinary action against him;

(d) Orns was never verbally reprimanded;

(e) Orns received consistent praise regarding his performance and reliability;

(f) Prior to 2021, Orns received pay raises every year, and annual performance bonuses in all but 2019 (wherein Orns' was told that was because the construction project he was on went over budget, so *no one* on the project was getting a bonus); and

(f)     Orns had an active role in interviewing, hiring, and successfully mentoring (2018-2019) a new engineer fresh out of college, Ester Maya.

27.    On June 28, 2019, while out on medical leave, Orns emailed a letter with the subject heading, "Reasonable Accommodations Request under the ADA," to TMC's HR Director and EEOC compliance officer, Tom Donaruma ("Donaruma"), requesting to discuss options for accommodating his cognitive disability so that he could return to work.

28.    In regard to the email referred to in Paragraph 27, Donaruma told Orns, that until he obtained a medical release from his doctor:

(a)     TMC would not discuss reasonable accommodations, and

(b)     Orns could not return to work.

29.    On or about September 6, 2019, Donaruma was informed that TMC's disability insurance carrier denied Orns' disability claim.

30.    On Wednesday, September 25, 2019, Orns obtained a medical-release letter from his new neurologist, Dr. Anna Khanna, and emailed a copy to Donaruma.

31.    Dr. Khanna's letter, dated September 16, 2019, states that Orns "may return to work on 9/23/19 with no restrictions." However, "[t]he patient should start a lower week hourly schedule of 30 hours. He may progress to

increased hourly obligations as tolerated."

32.  Donaruma told Orns that the letter referred to in Paragraph 31 was good, but he still could not return to work until he passed a drug test.

33.  Orns took a satisfactory drug test on Thursday, October 3, 2019.

34.  Orns was instructed to report to Senior Project Manager Russel Wilkens ("Wilkens"), for duty at the Brightline railroad construction project ("Brightline Project") at the Orlando International Airport.

35.  On or about Friday, October 4, 2019:

(a)  Orns reported to Wilkens and handed him a copy of Dr. Khanna's letter.

(b)  Orns told Wilkens that he wanted to discuss reasonable job accommodations with him and HR.

(c)  Wilkens told Orns:

(1)  that he wanted to handle accommodations at the job level and to keep HR out of it;

(2)  that he didn't want Orns to overexert himself as he did before;

(3)  that if Orns needed to go to any medical appointments, he could do so without submitting formal requests; and

(4)  that Orns could work his own hours and that he would tell the same to Orns' immediate supervisors, Project Engineer

George Hanna ("Hanna"), and Project Manager Warren Forsythe ("Forsythe").

36. On Monday, October 7, 2019, Orns reported to Hanna for duty at the Brightline Project.

37. For the next 16 months, from October 2019 until late February 2021, Orns worked approximately 30 hours per week without complaint from TMC.

38. On Wednesday, November 20, 2019, Orns was summoned to meet with Donaruma, Forsythe, and Wilkens. At said meeting:

   (a) Orns was told that he was free to attend medical appointments directly related to his mental disability without using his earned Paid Time Off ("PTO"); however, he needed to use PTO for any other absences.

   (b) Orns said he wanted to discuss reasonable job accommodations.

   (c) Donaruma told Orns that he wanted his doctor to

      (1) assess his mental abilities;

      (2) review his TMC job description; and

      (3) give him something in writing as to what accommodations could be made.

39. On Thursday, November 21, 2019, Orns sent an email to Donaruma requesting that Donaruma give him something in writing that he could

give directly to his doctor(s) as to what exactly it was Donaruma wanted regarding his request for reasonable accommodations.

40. The email referred to in Paragraph 39 was never addressed.

41. On December 2, 2019, Orns sent an email to Donaruma stating:

    (a)    that he just met with his VA psychologist;

    (b)    any request for VA medical information must be in writing; and

    (c)    he was still waiting on Donaruma to specify in writing what he was requesting.

42. In late December 2019, Orns received a golden lab service dog named, "Eddy," free of charge from the Pawsitive Action Foundation in St. Cloud, Florida.

43. With the approval of Forsythe, Eddy accompanied Orns to work everyday thereafter without complaint or incident.

44. In or around June 2020, Orns was assigned a new task, *i.e.*, creating the Daily Work Plan ("DWP") for the Brightline Project.

    (a)    The DWP task wasn't listed in any of TMC's policy and procedure documents as a Field Engineer's duty.

    (b)    TMC's written job description did not include the DWP task as an essential function of a Field Engineer.

    (c)    The DWP task is listed in TMC's Excel spreadsheet, *"Duties and*

*Responsibilities by Position_Jan 2021"*, as the duty of a *"Project Superintendent,"* and said document was created or approved by TMC's Southeast President, Alfred Aponas.

(d) TMC Office and Field Engineers do not have the authority to choose personnel, assign tasks, nor select equipment—all of which are part of the DWP's purpose.

(e) Orns never had the authority to create, alter, nor implement work plans for the various Brightline Project crews.

(f) On several occasions, Orns expressed that he was struggling with the DWP task to his immediate supervisors (Hanna and Forsythe) and also Brightline's Project Superintendent, John Lunardi ("Lunardi"), and requested the task be modified or eliminated from his duties.

(h) For a few weeks in or around July 2020, Orns was relieved of the DWP task, but it was reassigned for the remainder of his employment.

(i) After the DWP task was reassigned, Orns continued to complain to his supervisors and Lunardi that he was struggling with the DWP task.

45. On or about February 5, 2021, Forsythe tendered his notice of resignation,

and his last day was Friday, February 19, 2021.

46.   After Forsythe's resignation, TMC's Southeast Region's Vice President of Construction, Neil Mulrooney ("Mulrooney"), took command of the Brightline Project.

47.   In February 2021, Orns went to Mulrooney's office to talk to him about his mental disability, limitations, recent changes to his work hours, and the stress the DWP task was causing him. At said meeting:

(a)   Orns asked Mulrooney if he was aware of his disability and limitations.

(b)   Mulrooney said that he didn't want to know about Orns' disability and limitations, and asked if HR knew.

(c)   Orns said that HR knew about his disability and limitations.

(d)   Mulrooney said that he would verify that HR knew about Orns' disability and limitations, and that was all he wanted to know.

48.   At approximately 8:30 a.m. on Wednesday, March 3, 2021, Mulrooney and Donaruma went to Orns' office for a surprise meeting.

49.   During said meeting:

(a)   Donaruma said they were concerned about Orns' health, and wanted him to take FMLA ("Family Medical Leave Act") and apply for disability.

11

(b)   Orns told Mulrooney and Donaruma that he didn't want to take FMLA nor apply for disability.

50.   Donaruma was aware that TMC's disability insurance carrier previously denied Orns' disability claim back in September 2019.

51.   Mulrooney left Orns' office, and the meeting continued with just Donaruma and Orns. During which time:

(a)   Donaruma reiterated that Orns needed to go on FMLA and apply for disability;

(b)   Orns reiterated that he did not want to take FMLA nor apply for disability, because

   (1)   TMC's disability insurance carrier denied disability benefits to Orns before; and

   (2)   he would suffer significant financial loss, especially to his 401K retirement account that he was currently "maxing out";

(c)   Orns said that he didn't want to continue doing the DWP task, which was causing him stress and anxiety (Admitted by TMC in its verified Position Statement to the EEOC);

(d)   Orns said that he was "stressed out," and felt he just needed a vacation;

(e)   Orns requested reassignment to an open position, but was told there

were no openings for him.

    (f)    Donaruma said that Orns needed to leave immediately;

    (g)    Orns replied that he couldn't leave now, because

        (1)    he was in the middle of important work; and

        (2)    he needed to brief his immediate supervisor, Hanna.

    (h)    Donaruma replied that

        (1)    Hanna was already informed Orns was leaving, and

        (2)    reiterated that Orns needed to leave now, but he would be paid normally until the end of the week.

52.    Orns was mentally overwhelmed and felt that he had no choice but to leave.

53.    Donaruma then escorted Orns out of the office to his truck.

54.    Orns left the Brightline Project at approximately 8:45 a.m. on Wednesday, March 3, 2021, and hasn't worked for TMC since.

55.    On Thursday, March 4, 2021, TMC

    (a)    disabled Orns' corporate email account without notice;

    (b)    disabled Orns' access to TMC's sharepoint site without notice; and

    (c)    emailed medical leave and short-term disability paperwork to Orns' private email account.

56.    It is not TMC's standard practice to disable its employee's email accounts

while they are on vacation.

57.   On Friday, March 5, 2021, Orns sent an email using his private email account to Donaruma, which stated:

   (a)   "As I said in our meeting on Tuesday [sic], <u>I don't want to go on disability</u>." (underlined in original); and

   (b)   "Although I have repeatedly asked, we have never had any discussion about my specific assigned tasks and potential job accommodations to help me. I would like to start that discussion … ASAP."

58.   The email referred to in Paragraph 57 was never addressed (Admitted by TMC in its verified Position Statement to EEOC).

59.   On Sunday, March 7, 2021, Orns sent Donaruma an email with the subject heading, "Request for Reasonable Accommodations Under the ADA." This email

   (a)   said, "I do NOT now, nor have I ever wanted to go on short- or long-term disability, and I don't think you can legally make me. In fact, I think it's illegal for you to try to coerce me to do so in this instance."; and

   (b)   requested six accommodations:

      (1)   a short-notice, two-week vacation using part of Orns'

accumulated PTO;

(2) *continuation of his modified work schedule (which ultimately was denied);*

(3) continued allowance of his service dog;

(4) *elimination or modification of the DWP task (which ultimately was denied);*

(5) continuation of paid time off to attend mental health appointments; and

(6) *a "path to advancement or retention"—which proposed reassignment to an open position as an "Estimator" (which ultimately was denied).*

60. In its verified Position Statement to the EEOC, TMC falsely claims, "at this [sic] time of these requests TMC had already granted Mr. Orns a two-week vacation to relieve the stress he was experiencing from his job duties...."

61. On or about Monday, March 8, 2021, Orns submitted a two-week vacation request for Monday, March 8, 2021 through Friday, March 19, 2021 via Middlesex's web portal—which is standard operating procedure for vacation requests.

62. The two-week vacation request referred to in Paragraphs 60(b)(1) and 62, was retroactively approved on Tuesday, March 9, 2021.

63.   Orns was supposed to return from his two-week vacation on Monday, March 22, 2021.

64.   On Sunday afternoon, March 21, 2021, Orns forwarded a letter dated 03/19/2021 from his primary care doctor, Dr. Keith Gray, to Donaruma via email which said:

(a)   Orns was being treated for recurring migraine headaches, and

(b)    neuropsychiatric sequelae of stroke, which included

    (1)   neurocognitive impairment;

    (2)   generalized anxiety disorder; and

    (3)   major depressive disorder.

(c)   "These debilitating conditions cause substantial limitations in the major life activities of sleeping, concentrating, thinking, [and] working."

(d)   "Because of Bradley Orns' mental disabilities and associated limitations, it is my professional opinion, he needs some form of job accommodations to help him mentally cope." And suggested

    (1)   limiting workdays to 6 to 8 hours as tolerated;

    (2)   elimination or modification of creating Daily Work Plans; and

    (3)   time off to attend medical and mental health appointments.

(e)    "If these accommodations cannot be provided, because they would

impose an undue hardship upon Middlesex, please let Brad and I know so we can discuss alternatives."

65.  On Sunday evening, March 21, 2021, Donaruma called Orns and told him not to return to work on Monday morning as planned, because Donaruma first needed to meet with Hanna and Mulrooney about Orns' return, and that he would call Orns after said meeting.

66.  On Monday, March 22, 2018, Donaruma did not call Orns as promised, but instead sent Orns an email requesting that Orns' doctor review Orns' job description, and "ask him to provide us with insight as to what he believes you are able to regularly complete based on your disability."

67.  On Tuesday, March 23, 2021, Donaruma called Orns and told him

(a)  that he had spoken with Hanna and Mulrooney the day before;

(b)  Orns could not return unless he could work 50-60 hours per week including nights and weekends, and anything less would be an undue hardship for TMC (Admitted in TMC's verified Position Statement in response to Charge's ¶Q); and

(c)  that there were no open positions to which Orns could possibly be reassigned.

68.  On Wednesday, April 7, 2021, Orns sent an email with the subject heading "Undue Hardship for TMC" to Donaruma asking why "the continuation of

an abbreviated work schedule (6-8 hours/day) would constitute an undue hardship."

69.   The email referred to in Paragraph 68 was never answered.

70.   On Thursday, April 15, 2021, Donaruma

(a)   called Orns at 1:13 p.m., and told him he must fill out an "accommodation request form," and then

(b)   emailed Orns at 2:01 p.m. a "Reasonable Accommodation Request Form"—which Orns believes was created specifically for him.

71.   The "Reasonable Accommodation Request Form" referred to in Paragraph 70, required Orns to

(a)   cite his "specific functional limitation"

(b)   "[d]escribe the type of accommodation" requested; and

(c)   "certify" that he had a disability that "requires reasonable accommodation, which will be met by the equipment, services, or work adjustments above."

72.   On or about Friday, April 16, 2021, Orns dual filed a Charge of Discrimination with the EEOC and the FCHR. Attached as **EXHIBIT "A."**

73.   Plaintiff suffered significant emotional pain and mental anguish in the form of increased anxiety and depression, and started drinking alcohol.

74.   Plaintiff's blood pressure dramatically increased, he suffered severe

irritability, depression, and bouts of restlessness and fatigue, and migraine headaches with increased frequency.

75. Plaintiff suffered significant economic loss in the form of lost wages and retirement benefits.

76. The requested accommodation of eliminating the DWP from Orns' tasks would not have caused an "undue hardship" on the operation of TMC's business, and TMC failed to assert such a claim in its verified Position Statement to the EEOC.

77. TMC knowingly and willfully made a materially false representation to the EEOC by claiming in its Position Statement that "Completing the DWP is essential to fulfilling the role as a TMC Field Engineer;" in violation of 18 U.S.C. § 1001.

78. The requested accommodation of a continuation of a modified work schedule would not have caused an "undue hardship" on the operation of TMC's business, and TMC failed to assert such a claim in its verified Position Statement to the EEOC.

79. The requested accommodation of being transferred to an open position as an Estimator would not have caused an "undue hardship" on the operation of TMC's business, and TMC failed to assert such a claim in its verified Position Statement to the EEOC.

80. Plaintiff fears that if he were to return to work for Middlesex, that Middlesex will retaliate by looking for some pretext upon which to fire him "for cause."

81. Plaintiff believes that his fears of retaliation precludes returning to work for TMC, because it would unduly exacerbate his generalized anxiety disorder making his job mentally unbearable and likely cause poor performance leading to termination.

## CLAIMS

82. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth in the following Counts:

### *Count I - Failure to Provide Reasonable Accommodation*

83. TMC discriminated[2] against Orns by failing to provide reasonable accommodations for his known mental disabilities, and did so with reckless indifference of his civil rights, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

### *Count II - Disparate Treatment*

---

[2] In ADA parlance, the word "discriminate" is defined broadly to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability … unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). *See also Holly v. Clarison Indus.*, 492 F.3d 1247, 1263 ("Under the plain language of the ADA and the FCRA, an employer's failure to reasonably accommodate an 'otherwise qualified' disabled employee itself constitutes unlawful discrimination, unless the employer can show 'undue hardship.'").

84.     TMC did, in effect, terminate Orns' employment because of his known mental disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant for the following relief:

A.      financial compensation of actual **lost wages and benefits** including matching 401K contributions TMC would have made had Orns' employment continued unabated;

B.      financial compensation of $250,000 for **emotional pain and mental anguish**;

C.      **punitive damages** of $300,000 for reckless indifference regarding Orns' federally-protected civil rights, pursuant to 42 U.S.C. § 1981a(b);

D.      compensation for **lost future earnings and benefits,** *i.e.,* **"front pay"**;

E.      recoupment of all **legal expenses and attorney's fees** incurred in this matter; and

F.      any **other equitable relief** this Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted on this 13th day of December 2021.

*Bradley J Orns*

BRADLEY J. ORNS, *pro se*
310 W DIXIE AVE APT 2
LEESBURG, FL 32822
bradorns@gmail.com
813-403-3055

## DECLARATION

In accordance with 28 U.S.C. § 1749, I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 13th day of December 2021.

*Bradley J Orns*

BRADLEY J. ORNS, *pro se*